# Dixon v. Snyder Township, Appellant.

*Negligence—Townships—Steam rollers—Repair of roads.*

1. The Act of June 30, 1885, P. L. 251, entitled, "An act to regulate the movement of machinery propelled by steam upon the public roads and highways of this commonwealth," applies to township authorities using a steam roller in the ordinary construction and repair of the public roads.

2. A steam roller constantly traveling up and down a given section of a highway in the work of repairing it, is in every way within the sense

and spirit of the statute as fully as if it were on a journey from one end of the township to the other; and the township's officers and servants in control of the machine are bound to the performance of those duties in such cases prescribed by the statute.

*Practice, C. P.—Trial—Oversight of judge as to answering a point—Duty of counsel.*

3. Where a judge writes answers to several points submitted to him, but inadvertently fails to read one of the points and its answer to the jury, it is the duty of counsel to call the judge's attention to the oversight, and if this is not done, the judgment will not be reversed because of the failure of the judge to read the point and answer.

Argued Oct. 26, 1911. Appeal, No. 107, Oct. T., 1911, by defendant, from judgment of C. P. Blair Co., March Term, 1911, No. 285, on verdict for plaintiff in case of John Dixon v. Snyder Township. Before Rice, P. J.; Henderson, Morrison, Orlady, Head, Beaver and Porter, JJ. Affirmed.

Trespass to recover damages for the loss of a horse and injuries to a buggy and harness. Before Baldrige, P. J.

The facts are stated in the opinion of the Superior Court.

Verdict and judgment for plaintiff for $206. Defendant appealed.

*Errors assigned* were various instructions, and in not answering one of the several points which the defendant submitted.

*W. L. Pascoe,* of *Stevens & Pascoe* and *J. Banks Kurtz,* for appellant.—Irrespective of the statute, there can be no question that the township authorities were not only authorized, but legally compellable to keep the roads in good order and repair; that the steam roller they were using was "a necessary means to a lawful end—a means essential to the performance of a duty imposed by law;" and that, in the absence of negligence in its management—which was not attempted to be established—the township is not liable for damages occasioned by a horse becoming frightened at it: Keeley v. Shanley, 140 Pa. 213; Dist. of

Columbia v. Moulton, 182 U. S. 576 (21 Sup. Ct. Repr. 840); Sparr v. St. Louis, 4 Mo. App. 573, Appx.; McMulkin v. Chicago, 92 Ill. App. 331; Lane v. Lewiston, 91 Me. 292 (39 Atl. Repr. 999); Elam v. Mt. Sterling, 20 L. R. A. (N. S.) 512 (117 S. W. Repr. 250).

It is submitted, therefore, that when the act of 1885 was enacted, steam rollers for making roads were unknown and unused; that the legislature did not anticipate their future use by municipal authorities for building and repairing roads; and therefore could not have intended the provisions of the statute to be extended, by implication, to such authorities, who, without negligence, might thereafter employ such machinery in repairing the roads, they were legally bound to keep in order: Clulow v. McClelland, 151 Pa. 583; Coulter v. Pine Twp., 164 Pa. 543; Com. v. Allen, 148 Pa. 358.

The extension of an enactment by implication is confined to its strictly necessary incidents, or logical consequences.

*J. D. Hicks,* with him *R. A. Henderson* and *A. V. Dively,* for appellee.

OPINION BY HEAD, J., March 1, 1912:

The first and chief question involved in this appeal is whether or not the Act of June 30, 1885, P. L. 251, applies to township authorities using a steam roller in the ordinary construction and repair of the public roads. If it does not, it must be because the language of the statute is not sufficiently broad to include such municipal authorities; or because, if first included in the general language of the enacting portion of the statute, they are later excluded by some clause or proviso exempting persons or classes who would otherwise be bound by it.

The title of the statute is "An Act to regulate the movement of machinery propelled by steam upon the public roads and highways of this Commonwealth." So far as the legislative intent may be gathered from this alone, it

appears to have been its purpose to deal with the move-
ment of such machinery generally rather than with persons
or classes of persons owning or operating it.  The title is as
broad and comprehensive as language could well make it.
The first section provides that "It shall not be lawful for
any person or persons owning or controlling, for himself
or others, to move any machinery propelled by steam over
any public road or highway excepting under the provisions
·of this Act, &c."   The second and remaining section then
undertakes to specify the duties to be performed by "the
owner or owners or persons in charge of such machinery
upon the approach of travelers in vehicles, &c."

We think it cannot be successfully denied that the broad
and sweeping language of the first section clearly em-
braced municipal officers, their servants and agents, within
its prohibition.   "It shall not be lawful for any person or
persons" is the declaration of the statute.   Manifestly
then, any person or persons seeking to escape its obligation
must be able to point to some other portion of the act
lifting the burden so clearly imposed by the first section.
As we read the act, there is none.   Nor can we find any
clause or provision in any portion of the statute which,
by any proper judicial interpretation or construction, can
be said to create any such exemption by necessary implica-
tion.   In such cases we may well follow the path marked
out by the Supreme Court in Emerson v. Commonwealth,
108 Pa. 111, in the following language quoted by the
learned counsel for the appellant in support of his argu-
ment on another aspect of the statute: "The judicial
power of the government may sometimes impute a legisla-
tive intent not expressed with perfect clearness where the
words used import such intent, either necessarily or by a
plain and manifest implication.   But it would be a danger-
ous excess of judicial authority, not to be justified by any
considerations, for a court to declare a law by the imputa-
tion of intent, when the words used do not import it,
either necessarily or by plain implication, &c."

The conclusion thus necessarily forced on us from an

examination of the language of the act is greatly strength-
ened when we consider the mischief to be remedied.   The
danger to those using the highways in ordinary vehicles
drawn by horses when steam propelled machinery came
into use was obvious.   This danger would be greatly in-
creased as the use of the machinery extended.   Municipal
authorities of the various classes are charged with the duty
of constructing and maintaining the roads and highways.
In the performance of this duty the use of steam propelled
machinery is a valuable adjunct.   If by judicial construc-
tion that entire class should be taken outside the operation
of the statute, its beneficial effects would be to a consider-
able extent destroyed.   We must conclude, therefore, that
township officers using steam propelled machinery on
the public highways, in the manner contemplated by the
act, must be bound to the performance of the duties
imposed by the act on those using such machinery.

   This brings us to the second question, to wit, was the
steam road roller in the present case being used on the
public highway in the manner contemplated by the stat-
ute?   It will be observed that what is forbidden, except
when done in the manner provided by the act, is "to move
any machinery propelled by steam over any public road
or highway."   It is argued that the legislature contem-
plated that the act should apply only when such machinery
was being transported under its own steam from one
definite point to another.   The argument seems to be more
plausible than sound.   It is at once apparent that the
danger arising from such machinery, which the legislature
sought to obviate, exists when the machinery is in opera-
tion or motion as distinguished from a state of rest.   And
a steam roller, constantly traveling up and down a given
section of the highway in the work of repairing it, is in
every way within the sense and spirit of the statute as
fully as if it were on a journey from one end of the town-
ship to the other.   Again the language of the statute seems
to be sufficiently clear to mark its meaning without the
necessity for the application of any rules of interpretation.

It declares that when machinery propelled by steam is being moved over any public highway, it is the machinery which is the subject of the legislation, and, as already indicated, it would savor too much of refining to so consider this language as to hold that a steam road roller, engaged in the work for which it was designed, was not being moved upon a public highway.

In Keeley v. Shanley, 140 Pa. 213, the court had to consider the liability of a turnpike company for the result of an accident caused by a horse taking fright at a steam roller, not in operation but at rest, on a Sunday. Mr. Chief Justice PAXSON, after quoting the provisions of the Act of 1885, used this significant language: "These provisions apply only to the operation of the machine; the act is silent as to the duty of the owner when his machine is at rest at night and upon a Sunday." We may agree with the learned counsel for the appellant that the court was not there called upon to decide the exact question before us, but it was engaged in considering the meaning of the statute. The language we have just quoted is hardly capable of other interpretation than that the court, on a view of the whole purpose of the statute, must have reached the conclusion that when the legislature spoke of machinery "in motion," it used that term as distinguished from a state of rest and not as expressive of the idea that the machinery was being transported from one point to another. We are of opinion therefore that the steam machinery operated by the defendant township in the present case was being moved within the meaning of the statute, and that the defendant's officers and servants in control of that machinery were bound to the performance of those duties in such cases prescribed by the statute.

As the case was submitted to the jury their verdict establishes that there was a failure in such performance and that this was the proximate cause of the accident. Unless such verdict was the result of material errors on the part of the trial judge, the case has been properly disposed of. It is seriously urged upon us that the judgment should

be reversed because of the court's answer to the defendant's third point for charge. The point and answer are as follows: "Even if the court should be of the opinion that the act of June 30, 1885, is applicable to the township authorities, yet if the jury believe from the weight of the evidence in the case that the said authorities were operating the steam roller in the repair of their roads, without any negligence in its management, upon the road leading towards Warrior's Mark, at a point more than 300 feet distant from where the horse is alleged to have frightened, then the verdict of the jury must be for the defendant. *Answer:* That we affirm. If you gentlemen conclude that the horse had been frightened prior to the time of seeing the engine, then it would be your duty to find for the defendant." If the failure of the township authorities to perform the duties imposed by the statute be negligence, there was no conflict in the testimony that there had been such a failure at the time of the accident. It is indeed true that the officers, apparently recognizing their obligation to comply with the statute, had provided a man stationed at the point prescribed in the act to carry out its provisions. Unfortunately, at the moment of this serious accident he had left his post temporarily to perform some other service in connection with the work on hand. But it was seriously contended in the evidence by the defendant that the horse frightened before he came near the road roller and from some other cause, and it is this contention which was being brought conspicuously to the attention of the jury in the point. It was first of all affirmed. What was added by the learned trial judge, as we read it, was but an elaboration of the idea embraced within the point, and an attempt to make it clearer and more emphatic to the jury. We are unable to see that the jury could have been misled in any way to the detriment of the defendant by that portion of the answer complained of, and we cannot therefore say that this constituted reversible error.

It appears from the record that the defendant presented in all six written points. Each of them was answered in

writing by the learned trial judge, as the statute requires, and the printed record so shows. The fourth point, still further outlining the defendant's contention under the evidence, was as follows: "If the jury believe from the weight of the evidence in the case that the fright of the horse was not caused by the steam roller at all, then the verdict of the jury must be for the defendant. *Answer:* Affirmed." Now it appears that when, at the conclusion of the general charge, the learned trial judge undertook to read the several points and answers to the jury, by some oversight, he omitted entirely to read the fourth point and its answer. Manifestly he did not intentionally withhold the point, as is often properly done where it is refused, because he had in fact affirmed it. Had his attention been called to this oversight at the time, there is no room for contention that the point and its answer would not have been read. Under such circumstances we think it was the duty of counsel to call the attention of the court to this manifest oversight just as it would have been to an unconscious misstatement of a fact. The trial court is entitled to have such aid from counsel. And where, as here, the whole contention of the defendant on the evidence had been clearly and fairly reviewed in the general charge, the administration of justice does not require a reversal of a judgment for an apparent mistake of the character indicated.

After a patient examination of the entire record, we are of opinion that it presents no reversible error. The assignments are all overruled.

Judgment affirmed.

MORRISON, J., dissents.